UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------x
BELSITO COMMUNICATIONS, INC., Individually, and on
behalf of all others similarly situated,

                        Plaintiff,

             - against -

DELL, INC., DELL MARKETING, L.P., DELL DIRECT
SALES, L.P., DELL FINANCIAL SERVICES, L.L.C., and,
A.R.S. NATIONAL SERVICES, INC.,

                        Defendants.
---------------------------------------------------------------------x

**OPINION AND ORDER**

No. 12-CV-6255 (CS)

<u>Appearances</u>:
Kevin D. Bloom
Bloom & Bloom, P.C.
New Windsor, New York

Robert N. Isseks
Middletown, New York
*Counsel for Plaintiff*

John F. Cambria
Christina Spiller
Alston & Bird LLP
New York, New York

Scott A. Elder
Alston & Bird LLP
Atlanta, Georgia
*Counsel for Defendants*

<u>Seibel, J.</u>

       Before the Court is Defendants' Motion to Dismiss or Strike Class Allegations Pursuant

to Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 23(d)(1)(D). (Doc. 16.) For the reasons set forth

below, Defendants' Motion to Dismiss is GRANTED IN PART and DENIED IN PART, and

Defendants' Motion to Strike is DENIED.

I.  BACKGROUND

For the purposes of the instant Motion, I accept as true the facts, but not the conclusions, as set forth in the Verified Complaint ("Compl.").  (Doc. 1.)

**A.  Factual Background**

1.  The Parties

Plaintiff Belsito Communications, Inc. is a New York corporation with its corporate offices at 1 Ardmore Street, New Windsor, New York, 12553 (the "New Windsor address"). (Compl. ¶¶ 2-3.)  Plaintiff was previously located at 53 Route 17K, Newburgh, New York, 12550 (the "Newburgh address").[1]  (*Id.* ¶ 71.)  Plaintiff acts through its President, Joseph P. Belsito.  (*Id.* ¶ 35.)  Plaintiff is in the business of newspaper publishing and website development, design, and hosting.  (*Id.* ¶ 4.)  Defendant Dell, Inc. and its wholly owned subsidiaries, Defendants Dell Marketing, L.P. and Dell Direct Sales, L.P. (collectively, the "Dell Entities"), sell computers to businesses and institutions.  (*Id.* ¶¶ 5-11.)  Defendant Dell Financial Services, L.L.C. ("DFS") – in which Dell, Inc. has a 70% ownership interest, (*id.* ¶ 15) – offers financing to business customers purchasing products from the Dell Entities, (*id.* ¶ 16). Defendant A.R.S. National Services, Inc. ("ARS") is a collection agency that, other than attempting to collect on Plaintiff's debt to DFS, is apparently unaffiliated with the Dell Entities.[2] (*Id.* ¶¶ 18-21.)

---

[1] Plaintiff apparently received billing statements at the Newburgh address from Defendant Dell Financial Services, L.L.C. ("DFS") until December 2007, at which time DFS began sending bills to the New Windsor address.  (*See* Compl. ¶¶ 29, 71, 80.)  According to the Complaint, Plaintiff told a DFS representative in May 2011 that it had not used the Newburgh address "for over five years."  (*Id.* ¶ 71.)  This apparent inconsistency is not relevant to Plaintiff's apparently undisputed allegation that Plaintiff did not receive invoices that DFS sent to the Newburgh address between October 2010 and May 2011.  (*Id.* ¶¶ 65, 80, 82.)

[2] Although named as Defendants in the Complaint, Plaintiff has alleged no claim against any of the Dell Entities. (*See* Compl. ¶ 144 (DFS breached alleged contract); *id.* ¶ 147 (DFS breached implied covenant of good faith and fair dealing); *id.* ¶ 151 (DFS defamed Plaintiff's credit); *id.* ¶ 157 (DFS was negligent); *id.* ¶ 160 (DFS was grossly negligent); *id.* ¶ 167 (seeking constructive trust imposed on "ARS and/or DFS").)  Furthermore, other than its 70% ownership interest in DFS, Plaintiff has alleged no facts that Dell, Inc. was in any way involved in DFS's actions.

2.  The October 2010 Solicitation and Laptop Purchase

Prior to October 2010, Plaintiff had purchased multiple DFS-financed computer products from the Dell Entities.  (*Id.* ¶¶ 27-28.)  DFS, apparently pursuant to its financing agreement with Plaintiff,[3] sent monthly billing statements to Plaintiff's New Windsor address, which Plaintiff would timely pay.  (*Id.* ¶¶ 29, 32.)  In October 2010, Plaintiff received one such billing statement accompanied by a paper solicitation, offering DFS financing for the purchase of new equipment from the Dell Entities with "no payments by [Plaintiff] to DFS for the first six months following the purchase."  (*Id.* ¶ 34.)  Plaintiff contacted a Dell representative and purchased a laptop (and associated equipment) for $6,547.78 pursuant to the terms of the solicitation,[4] confirming with the representative that there would be no payments required for six months and that the cost would be billed through Plaintiff's existing DFS account at the New Windsor address.  (*Id.* ¶¶ 37, 39, 43.)

Plaintiff received the laptop at the New Windsor address on or about October 22, 2010.  (*Id.* ¶ 57.)  Soon after its delivery, Plaintiff began having technical difficulties with the laptop; they were resolved, after numerous calls and emails with Dell representatives, in January 2011.  (*Id.* ¶¶ 58-64.)

---

Accordingly, the Complaint should be dismissed as against the Dell Entities. By letter dated August 20, 2013, (Doc. 26), however, Plaintiff has requested leave to amend its complaint on the basis of new information obtained in discovery.  Pursuant to my Individual Practices, the parties are directed to appear at a pre-motion conference on October 4, 2013, at 11:45 a.m.  Because the amendment, if allowed, may implicate one or more of the Dell Entities, the dismissal of those entities here is without prejudice.

[3] With their Motion, Defendants submitted an unsigned copy of the Dell Business Credit Agreement ("DBCA"), (Declaration of Erin Towns ("Towns Decl."), (Doc. 18), Ex. A), which it argues governs the financing agreement between DFS and Plaintiff, (*see* Memorandum of Law in Support of Defendants' Motion to Dismiss All Claims or, Alternatively, Strike Class Allegations Pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 23(d)(1)(D) ("Ds' Mem."), (Doc. 17), 11). Plaintiff does not dispute that the DBCA (either as written or as later modified) controls, and indeed relies in its brief on specific terms of the DBCA.  (*See* Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("P's Mem."), (Doc. 19), 5 ("This claim stems from Belsito's credit agreement with DFS . . . .").)

[4] Neither side provided the Court with a copy of the paper solicitation.  Nevertheless, as I must on a motion to dismiss, I accept as true Plaintiff's factual allegations as to the solicitation's content.

3.  DFS's Billing and the "Charge Off"

From October 2010 to May 2011, Plaintiff received monthly billing statements from DFS at its New Windsor address, and continued to timely pay them.  (*Id.* ¶ 65.)  Apparently, these invoices did not include the added principal for the new laptop; DFS sent laptop-purchase invoices, apparently under a different DFS account number, to the Newburgh address.  (*See id.* ¶ 80.)  Plaintiff suggests that it became aware of the issue on May 31, 2011, when it received a call from a collection agency[5] indicating that DFS had not received any payments for the laptop and demanding payment in full.  (*Id.* ¶¶ 66-68.)  Plaintiff was surprised because it had timely paid the balance reflected on the DFS bills received at its New Windsor address and because, based on the paper solicitation, it did not expect to be billed for the laptop until six months after the purchase.  (*See id.* ¶¶ 69, 73, 75, 84.)  Plaintiff, through this conversation and another on the same day with a DFS manager, learned that DFS had been sending the laptop-financing bills to the Newburgh address, and that those bills had been returned to sender.  (*Id.* ¶¶ 71, 80, 82.) Plaintiff also learned that DFS had an incorrect telephone number on file, which apparently was why DFS was otherwise unable to contact Plaintiff in connection with the returned bills.  (*Id.* ¶¶ 81-82.)  The DFS manager explained that Plaintiff's account had been irreversibly "charged off" – that is, written off the company's books as a loss, and apparently referred or sold to a debt collector, (*id.* ¶ 87) – and conceded that "it was 'Dell's' error" to maintain incorrect contact information and "charge off" the debt.[6]  (*Id.* ¶¶ 86, 89.)  Plaintiff contacted the collection agency on the same day and demanded both that the account be restored to DFS – so that he could pay DFS in accordance with the terms it agreed to – and that the "charge off" be removed.  (*Id.* ¶

---

[5] Plaintiff does not know whether this call was from Defendant ARS.  (Compl. ¶ 78.)

[6] It is unclear whether the manager's reference to "Dell's" error referred to DFS or one of the Dell Entities. Drawing all reasonable inferences in favor of Plaintiff, however, I will assume for purposes of this Motion that DFS admitted that it was its own error.

100.)  The collection agency refused, demanding full payment.  (*Id.* ¶ 101.)  This pattern

continued for some time.  (*Id.* ¶ 102.)  Apparently, Plaintiff has still not paid for the laptop.

    4.  <u>The Consequences of the "Charge Off"</u>

    On or about May 8, 2012, nearly one year later, Plaintiff received a notification from

KeyBank – its creditor that was providing funding for operations of Orange County Healthcare

News, Inc., Plaintiff's wholly owned subsidiary that published Orange County Healthcare News

in California, (*id.* ¶¶ 104, 119) – indicating that it was withdrawing Plaintiff's $50,000 business

line of credit "because of a 'business report derogatory rating.'"  (*Id.* ¶ 103.)  Plaintiff learned

that Equifax, a national credit reporting bureau, had reported to KeyBank that one of Plaintiff's

creditors had "charged off" an account.  (*Id.* ¶¶ 106-07.)  After inquiring further and ordering its

credit report from Equifax, Plaintiff ultimately learned that it was the DFS "charge off" – which

DFS had reported to Equifax on or about April 30, 2012 – that led to the derogatory information

on its credit report.  (*Id.* ¶¶ 110-13.)  On June 11, 2012, Plaintiff tried (unsuccessfully) to have

the "charge off" removed through Equifax.  (*Id.* ¶¶ 115-16.)  Plaintiff alleges that, as a result of

KeyBank suspending its line of credit, it "ceased publication of [Orange County] Healthcare

News, laid off its employees who worked on the publication in California, and lost its investment

of $75,000 in the publication."  (*Id.* ¶ 118.)  Additionally, Plaintiff now owes $7,641.29, which it

alleges includes "accrued interest, penalties, and fees," for the laptop computer.  (*Id.* ¶ 120-21.)

**B.  <u>Procedural History</u>**

    Plaintiff commenced this diversity action on August 15, 2012.  (Doc. 1.)  Plaintiff brings

claims for breach of contract, breach of the implied covenant of good faith and fair dealing,

defamation of credit, negligence, gross negligence, and imposition of a "constructive trust," (*see*

Compl. ¶¶ 138-67), and seeks both damages and injunctive relief, (*see id.* ¶¶ 168-72; *id.* at 32-33

(prayer for relief)).  Plaintiff also brings these claims on behalf of a putative class of customers

who purchased DFS-financed computer products through the Dell Entities whose DFS billing statements were sent to old and/or incorrect addresses, resulting in increased fees, their accounts being "charged off," or negative credit reports.  (*See id.* ¶ 130-31, 145, 149, 154, 158, 161, 167, 169.)  On December 6, 2012, at a pre-motion conference, I granted Defendants leave to file their Motion to Dismiss, seeking dismissal of all claims under Fed. R. Civ. P. 12(b)(6) and, in the alternative, requesting that I strike Plaintiff's class allegations under Fed. R. Civ. P. 23(d)(1)(D). (Doc. 16.)

## II.  DEFENDANTS' MOTION TO DISMISS

### A.  Motion to Dismiss Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (alteration, citations, and internal quotation marks omitted).  While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not

entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

**B.  <u>Documents Outside of the Complaint</u>**

When deciding a motion to dismiss, the Court's review is ordinarily limited to "the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007); *see Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006). Thus, "[w]hen matters outside the pleadings are presented [in support of or] in response to a 12(b)(6) motion, a district court must either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment . . . and afford all parties the opportunity to present supporting material." *Friedl v. City of N.Y.*, 210 F.3d 79, 83 (2d Cir. 2000) (alteration and internal quotation marks omitted). Under certain circumstances, however, it is appropriate for a court to consider documents outside of the pleadings on a motion to dismiss. *See Weiss v. Inc. Vill. of Sag Harbor*, 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011). For example, a court may consider documents upon the terms and effect of which the complaint relies heavily – that is, an "integral" document – without converting a motion to dismiss into a summary judgment motion, *see Chambers v. Time Warner, Inc.*, 282

F.3d 147, 153 (2d Cir. 2002), provided it is "clear on the record that no dispute exists regarding the authenticity or accuracy of the document," *Faulkner*, 463 F.3d at 134.

With their Motion, Defendants submitted the DBCA, (Towns Decl. Ex. A), as well as a number of invoices mailed from DFS to Plaintiff:  the first, dated October 20, 2010, was addressed to the Newburgh address, (*id.* Ex. B); the remaining three, dated September 29, 2010, November 28, 2010, and May 29, 2011, respectively, were addressed to the New Windsor address, (*id.* Ex. C).  I will consider the DBCA because Plaintiff clearly relied heavily on its terms and effect in drafting the Complaint.  Indeed, according to Plaintiff, the terms of the DBCA, as modified by the acceptance of the paper solicitation, form the basis of Plaintiff's breach of contract claim.  (P's Mem. 3-5.)  Furthermore, not only does Plaintiff not dispute the authenticity or accuracy of the document, but it also expressly relies on it in its brief.  (*See id.* at 5.)  As to the invoices, however, I will not consider them.  Plaintiff has not relied on their terms and effects in the Complaint.[7]

### C.  <u>Breach of Contract Claim</u>

To state a claim for breach of contract under New York law,[8] a plaintiff must plausibly allege "(1) a contract; (2) performance of the contract by one party; (3) breach by another party;

---

[7] Plaintiff mentions that it paid the invoices sent to the New Windsor address, (Compl. ¶ 65), but says nothing about their terms or effect.  Plaintiff also says nothing about the invoice sent to the Newburgh address except that that address was outdated and that it never received such invoice.  Even if I did consider the invoices, it would not affect the outcome of the instant Motion.  Defendants repeatedly rely on the invoices as evidence that no promise of a six-month deferral was made.  (*See* Ds' Mem. 4-5, 9.)  According to Defendants, the issuance of the invoices with the absence of any indication of such a deferral proves that deferral was not a term of the parties' agreement.  (*See id.* at 9.)  Aside from the fact that at this stage I must accept Plaintiff's allegations regarding the deferral as true, and cannot consider documents not integral to the Complaint, Defendants' argument is circular.  The absence of a deferral term on the wrongly-addressed invoices does not establish that no deferral promise was made.  It shows that if such promise was made, it was not honored, but it does not shed light either way on whether it was made in the first place.

[8] Both parties assume that New York law governs Plaintiff's breach of contract claim, despite the DBCA stating that Utah law governs.  (Towns Decl. Ex. A, at col. 6.)  Because both parties agree that New York law governs, *see Walter E. Heller & Co. v. Video Innovations, Inc.*, 730 F.2d 50, 52 (2d Cir. 1984), and because there does not appear to be a conflict between New York and Utah law, I will apply New York law, *see Wall v. CSX Transp., Inc.*, 471 F.3d 410, 422-23 (2d Cir. 2006).  As to Plaintiff's remaining claims, because the parties also agree that New York

and (4) damages." *Terwilliger v. Terwilliger*, 206 F.3d 240, 245-46 (2d Cir. 2000) (internal

quotation marks omitted).

    1.  <u>Existence of a Contract</u>

Under New York law, "[t]o create a binding contract, there must be a manifestation of

mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to

all material terms." *Express Indus. & Terminal Corp. v. N.Y. State Dep't of Transp.*, 93 N.Y.2d

584, 589 (1999). The same applies to a contract modification, which "'results in the

establishment of a new agreement between the parties which *pro tanto* supplants the affected

provisions of the original agreement while leaving the balance of it intact.'" *United States v. J.*

*Kokolakis Contracting, Inc.*, No. 05-CV-9097, 2007 WL 1771561, at *4 (S.D.N.Y. June 19,

2007) (quoting *Beacon Terminal Corp. v. Chemprene, Inc.*, 429 N.Y.S.2d 715, 717-18 (App.

Div. 2d Dep't 1980)). "Under New York law, parties may modify a contract by another

agreement, by course of performance, or by conduct amounting to a waiver or estoppel." *Dallas*

*Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 783 (2d Cir. 2003) (internal quotation marks

omitted). Thus, as with the formation of the contract itself, modification of a contract requires

some sort of mutual assent to its terms. *See id.*

Here, both parties agree that the DBCA is the governing agreement, although they

dispute whether the terms of the paper solicitation, which Plaintiff alleges it accepted, were

incorporated therein as a modification. Although an advertisement generally does not constitute

an offer creating the power of acceptance in the offeree, it can constitute an offer where the

advertisement is sufficiently clear, definite, and explicit so as to leave nothing open for

negotiation. *See Leonard v. PepsiCo, Inc*, 88 F. Supp. 2d 116, 122-24 (S.D.N.Y. 1999), *aff'd*,

---

law governs, and there is no other indication in the record that any other state's law would apply, I will apply New
York law. *See Walter E. Heller & Co.*, 730 F.2d at 52 ("[I]n the absence of a strong countervailing public policy,
the parties to litigation may consent by their conduct to the law to be applied.") (collecting cases).

210 F.3d 88 (2d Cir. 2000) (per curiam); *accord Trell v. Am. Ass'n for Advancement of Sci.*, 310 F. App'x 447, 448 (2d Cir. 2009) (summary order).  I find that Plaintiff has plausibly alleged that, in connection with its purchase of the laptop, the parties indeed modified the DBCA to incorporate the terms of the paper solicitation – namely, the promise that DFS would finance the purchase of the laptop without billing Plaintiff for six months.  Plaintiff alleges sufficient factual content of the solicitation to render plausible at this stage the conclusion that it was clear, definite, and explicit enough to constitute an acceptable offer.  *See Leonard*, 88 F. Supp. 2d at 122-24.  Plaintiff confirmed that the offer was valid with a representative of Dell, Inc., and accepted the offer by purchasing the laptop.[9]  (Compl. ¶¶ 37-39.)  Thus, Plaintiff plausibly alleges that the promise not to bill it for six months became a part of the DBCA, and that DFS breached this promise.

Defendants' principal argument is that Plaintiff failed to allege the particular terms of a specific contract that DFS allegedly breached.  (*See* Ds' Mem. 9-10.)  It is true that, under New York law, a breach of contract plaintiff "must identify specifically breached contract terms." *CreditSights, Inc. v. Ciasullo*, No. 05-CV-9345, 2008 WL 4185737, at *11 (S.D.N.Y. Sept. 5, 2008); *see Wolff v. Rare Medium, Inc.*, 171 F. Supp. 2d 354, 358 (S.D.N.Y. 2001) ("[A] plaintiff must identify what provisions of the contract were breached as a result of the acts at issue."); *Mandarin v. Wildenstein*, 16 N.Y.3d 173, 182 (2011) (dismissing breach of contract claim because plaintiff failed to "plead[] the pertinent terms of the purported agreement").  As to the the six-month billing deferral term, Plaintiff has plausibly done so.  Plaintiff alleges that the paper solicitation from DFS offered to finance a computer purchase with the promise that "there would be no payments by [Plaintiff] to DFS for the first six months following the purchase,"

---

[9] Plaintiff alleges that the solicitation originated from DFS, (Compl. ¶ 34), but that he accepted the offer via a representative of Dell, Inc., (*id.* ¶ 36).  Drawing all reasonable inferences in favor of Plaintiff, I find that this suffices to plausibly allege acceptance of DFS's offer at this stage.

(Compl. ¶ 34), and that he accepted this offer in purchasing the laptop, (*id.* ¶ 37-39). This is sufficient at this stage to identify a specifically breached contract term. *See CreditSights*, 2008 WL 4185737, at *11.

Plaintiff also alleges that DFS breached a requirement that it send bills to Plaintiff's correct address, arguing that "by the clear implication of the [DBCA's] terms, together with the parties' extensive and consistent course of dealing, DFS was contractually obligated to mail the billing statements relating to [Plaintiff's] account to the [New Windsor] address unless notified by [Plaintiff] to use a different address (which did not occur)." (P's Mem. 5-6.) Plaintiff alleges that it provided the New Windsor address when purchasing the laptop, (Compl. ¶¶ 41-43), and points in its brief, (P's Mem. 5), to the term in the DBCA stating that if Plaintiff moves or changes its address "the Account Custodian [*i.e.*, Plaintiff] will be responsible to send a notice of the new address in writing by mail or online to www.dellfinancialservices.com," (Towns Decl. Ex. A, at col. 6). It is plausible to infer from this term alone that, absent notification to the contrary, DFS agreed to send invoices to the address Plaintiff initially provided, which Plaintiff plausibly alleges was the New Windsor address. Drawing all reasonable inferences in Plaintiff's favor, as I must on a motion to dismiss, this suffices to identify a specifically breached term. *See CreditSights*, 2008 WL 4185737, at *11.[10]

Defendants also suggest that the DBCA's merger/integration clause precludes Plaintiff's claim. (*See* Ds' Reply Mem. 2 (quoting and emphasizing merger/integration clause); *see also* Ds' Mem. 4 n.5 (pointing out "merger clause"); *id.* at 11 (referring to DBCA as "fully-

---

[10] It is unnecessary to address Plaintiff's argument regarding "course of dealing" to reach the conclusion that Plaintiff has plausibly alleged that the promise to send bills to the correct address is a term of the DBCA.

integrated").)[11]  As to the billing address term, Plaintiff has plausibly alleged that this promise is embodied in the DBCA itself.  As to the billing deferral term, Defendants suggest that the DBCA provides that it may not be contradicted by evidence of any oral agreement, (Ds' Reply Mem. 2), and that Plaintiff's allegations regarding the six-month deferral contradict the DBCA's provision for monthly billing, (Ds' Mem. 4 & n.5).  While the merger and monthly billing provisions appear in the DBCA, they do not defeat the plausibility of Plaintiff's claim, for three reasons.  First, Plaintiff has plausibly alleged a written promise for a six-month deferral – the paper solicitation.  Second, the monthly billing provision only says that "invoice[s] for amounts due . . . will be issued monthly."  (Towns Decl. Ex. A, at col. 2.)  It does not say *when* amounts would become due, and so plausibly can be read to state no more than whenever amounts become due, they will be billed monthly.  Finally, merger/integration "clauses are enforceable according to their terms to bar claims based on prior [or contemporaneous] understandings that contradict the plain terms of the written agreements."  *Village on Canon v. Bankers Trust Co.*, 920 F. Supp. 520, 528 (S.D.N.Y. 1996) (collecting New York cases).  But they "only apply to preclude alleged agreements made prior to the signing of a written contract containing the integration clause, not those made subsequent to the written contract."  *BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 778 F. Supp. 2d 375, 412 n.9 (S.D.N.Y. 2011) (collecting cases).  There is no indication that the acceptance of the paper solicitation occurred before the DBCA came into effect.  If the DBCA came into force when Plaintiff first became a customer of DFS years earlier, the clause would not prohibit subsequent contradictions.[12]  That the DBCA may

---

[11] "Ds' Reply Mem." refers to the Reply Memorandum of Law in Support of Defendants' Motion to Dismiss All Claims or, Alternatively, Strike Class Allegations Pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 23(d)(1)(D).  (Doc. 20.)

[12] Indeed, there is no clause prohibiting subsequent oral or written modifications of the DBCA.  (*See* Towns Decl. Ex. A., at col. 6 ("Amendments" section).)

well have preceded the paper solicitation is plausible, given:  1) the ongoing years-old

relationship between Plaintiff and DFS; and 2) the unusual phrasing in the affidavit Defendants

submit to authenticate the DBCA – "[a]ttached . . . is the [DBCA] that governs the credit

relationship between DFS and [Plaintiff] for the laptop purchase . . . that is the subject of this

litigation," (Towns Decl. ¶ 3) – which omits mention of whether it also governs other, previous

purchases or when it came into effect.

    2.  <u>Plaintiff's Performance Excused by DFS's Material Breach</u>

      Defendants argue that Plaintiff's breach of contract claim should be dismissed because

Plaintiff failed to perform under the contract.  (Ds' Mem. 11 n.11.)  Plaintiff does not dispute,

and even specifically alleges in the Complaint, that it has not made a single payment for the

laptop, and thus has not performed its end of bargain.  (*See* Compl. ¶ 102.)  Plaintiff argues,

however, that its performance under the contract should be excused because of Defendants' prior

material breach.

      "Under New York law, a party's performance under a contract is excused where the other

party has substantially failed to perform its side of the bargain or, synonymously, where that

party has committed a material breach."  *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500

F.3d 171, 186 (2d Cir. 2007).  "[F]or a breach of a contract to be material, it must go to the root

of the agreement between the parties."  *Frank Felix Assocs., Ltd. v. Austin Drugs, Inc.*, 111 F.3d

284, 289 (2d Cir. 1997) (internal quotation marks omitted); *see id.* (breach is material where it

"defeats the object of the parties in making the contract").  New York courts look to five factors

in determining whether a party has substantially performed:

> the ratio of the performance already rendered to that unperformed,
> the quantitative character of the default, the degree to which the
> purpose behind the contract has been frustrated, the willfulness of
> the default, and the extent to which the aggrieved party has already
> received the substantial benefit of the promised performance.

*Hadden v. Consol. Edison Co. of N.Y., Inc.*, 34 N.Y.2d 88, 96 (1974); *accord Merrill Lynch & Co.*, 500 F.3d at 186.  The question of whether a party has substantially performed – in other words, whether a breach is material – "is usually a question of fact and should be decided as a matter of law only where the inferences are certain."  *Merrill Lynch & Co.*, 500 F.3d at 186; *see Bear, Sterns Funding, Inc. v. Interface Grp.-Nev., Inc.*, 361 F. Supp. 2d 283, 295-96 (S.D.N.Y. 2005) (collecting cases).

On a motion to dismiss, drawing all reasonable inferences in favor of Plaintiff, I find that Plaintiff has plausibly alleged that DFS committed a material breach of the modified DBCA by billing Plaintiff within the first six months of its laptop purchase.[13]  Plaintiff alleges that it purchased the laptop "in reliance upon said solicitation," (Compl. ¶ 35) – indeed, the solicitation seemed to have prompted the purchase – and thus it is reasonable to infer that, at least for Plaintiff, the six months of free financing for the laptop went to the "root of the agreement," *see Frank Felix*, 111 F.3d at 289.  In other words, Plaintiff plausibly alleges that DFS "defeat[ed] the object of the parties in making the contract" by effectively requiring Plaintiff to pay within six months of purchasing the laptop, despite DFS's promise not to bill in that period.  *Id.*  Because Plaintiff has plausibly alleged that DFS materially breached the modified DBCA, Plaintiff's performance thereunder plausibly is excused and its non-payment plausibly not a bar to its breach of contract claim.

### D.  <u>Breach of Implied Covenant of Good Faith and Fair Dealing Claim</u>

Under New York law, "an implied covenant of good faith is read into every contract." *Sawabeh Info. Servs. Co. v. Brody*, 832 F. Supp. 2d 280, 301 (S.D.N.Y. 2011) (internal quotation

---

[13] Given my decision, I need not address whether DFS's failure to send the bill to the correct address was also a material breach.  I note, however, that the facts in the case on which Defendants rely – *see Asesores y Consejeros Aconsec CIA, S.A. v. Global Emerging Mkts. N. Am., Inc.*, 841 F. Supp. 2d 762, 767-68 (S.D.N.Y. 2012) – bear little resemblance to those here.

marks omitted).  It "embraces a pledge that neither party shall do anything which will have the

effect of destroying or injuring the right of the other party to receive the fruits of the contract."

*Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389 (1995) (internal quotations omitted).  "New

York law . . . does not recognize a separate cause of action for breach of the implied covenant of

good faith and fair dealing when a breach of contract claim, based upon the same facts, is also

pled."  *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002).

Additionally, to state a claim for breach of the implied covenant of good faith and fair dealing

under New York law, Plaintiff must plausibly allege "(1) fraud, (2) malice, (3) bad faith, (4)

other intentional wrongdoing, or (5) reckless indifference to the rights of others such as gross

negligence."  *Log On Am., Inc. v. Promethean Asset Mgmt. L.L.C.*, 223 F. Supp. 2d 435, 451

(S.D.N.Y. 2001).  A plaintiff must allege facts sufficient to render plausible the conclusion that

the defendant acted with the requisite state of mind; conclusory allegations will not suffice.  *See

Ferguson v. Lion Holding, Inc.*, 478 F. Supp. 2d 455, 469-70 (S.D.N.Y. 2007).

  Plaintiff argues that its claim is based not on the facts underlying its breach of contract

claim – that is, DFS billing within six months and sending the bills to the wrong address – but on

DFS's alleged "duty to accurately report [Plaintiff's] credit information to credit bureaus."  (P's

Mem. 8.)  Plaintiff identifies this duty in the DBCA's "Credit Investigation and Reporting"

clause, (*see id.*), which provides that "[i]n the event that the Account is not paid, Lender may

report the liability of the Borrower . . . and the status of the Account, to credit bureaus and others

who may lawfully receive such information," (Towns Decl. Ex. A, at col. 6).  Plaintiff's

argument is unavailing.  Assuming the quoted contractual provision amounts to a promise not to

report Plaintiff to Equifax unless Plaintiff was delinquent, DFS's alleged reporting of Plaintiff to

Equifax when Plaintiff was not delinquent would be a breach of the DBCA itself, not the implied covenant of good faith and fair dealing.

It is, however, plausible that the implied covenant of good faith and fair dealing means that DFS had a duty, beyond the quoted contractual provision, not to treat Plaintiff as delinquent (by charging off the account, assessing late fees, reporting Plaintiff to credit agencies, or otherwise) unless Plaintiff really was delinquent – and at the very least, to take steps to un-do the damage from such conduct once it was pointed out. *See 511 W. 232nd Owners Corp. v. Jennifer Realty Co.*, 98 N.Y.2d 144, 153 (2002) (duty encompasses "any promises which a reasonable person in the position of the promisee would be justified in understanding were included") (internal quotation marks omitted). That refusal, or the subsequent reporting of Plaintiff to Equifax, plausibly supplies the required malice or reckless indifference to Plaintiff's rights. *See Log On Am.*, 223 F. Supp. 2d at 451. Although it is less clear that Plaintiff has plausibly alleged that it was deprived of the fruits of the contract – to the contrary, it seems to have been using the laptop computer without having paid anything – nevertheless it arguably was deprived of the fruits of the contract via the damage to its business from the false report.

Accordingly, Plaintiff's claim for breach of the implied covenant of good faith and fair dealing will not be dismissed.

**E.   Defamation of Credit Claim**

To state a claim for defamation under New York law, a plaintiff must plausibly allege "(1) a false statement of fact, (2) about the [plaintiff], (3) published to a third party without authorization or privilege, (4) through fault amounting to at least negligence, and (5) causing defamation *per se* or a special harm." *D'Annunzio v. Ayken, Inc.*, 876 F. Supp. 2d 211, 216 (E.D.N.Y. 2012); *see Salvatore v. Kumar*, 845 N.Y.S.2d 384, 388 (App. Div. 2d Dep't 2009).

New York law grants a qualified "common interest" privilege to "defamatory communications made by one person to another upon a subject in which both have an interest." *Meloff v. N.Y. Life Ins. Co.*, 240 F.3d 138, 145, 146 (2d Cir. 2001) (internal quotation marks omitted). The common interest privilege extends to communications between creditors and credit reporting agencies such as Equifax, who have a common interest in information regarding their customers' creditworthiness. *See Holder v. Gen. Motors Corp.*, 732 N.Y.S.2d 545, 548 (Sup. Ct. 2001) ("As a former creditor of the plaintiff, defendant . . . possessed a qualified privilege to communicate credit information concerning plaintiff to parties who had a common interest in the information, such as credit agencies."); *see also Graney Dev. Corp. v. Taksen*, 411 N.Y.S.2d 756, 756 (App. Div. 4th Dep't 1976) (bank has qualified privilege protecting disclosure of erroneous credit information as to one of its borrowers); *cf. Cnty. Vanlines, Inc. v. Experian Info. Solutions, Inc.*, 317 F. Supp. 2d 383, 390 (S.D.N.Y. 2004) (qualified privilege to communications from "[c]redit investigation and reporting agencies" to their clients – that is, current or would-be creditors), *aff'd*, No. 04-CV-2982, 2005 WL 3117211 (2d Cir. Nov. 22, 2005) (summary order); *Ormsby v. Douglass*, 37 N.Y. 477, 484 (1868) (qualified privilege protects communications among merchants regarding creditworthiness of "those who propose to deal with them, and those upon whose standing and responsibility they, in the course of their business, have occasion to rely").

To overcome the qualified privilege at the motion to dismiss stage, a plaintiff must plausibly allege that the defendant acted with malice, which the New York Court of Appeals interprets to mean "spite or a knowing or reckless disregard of a statement's falsity." *Rosenberg v. MetLife, Inc.*, 8 N.Y.3d 359, 365 (2007); *see Orenstein v. Figel*, 677 F. Supp. 2d 706, 711 (S.D.N.Y. 2009). Conclusory allegations of malice, unsupported by facts, are insufficient to survive a motion to dismiss. *See Orenstein*, 677 F. Supp. 2d at 711 (dismissing defamation claim

because plaintiff "utterly fail[ed] to plead facts that could support his conclusory allegations regarding defendants' purported – and implausible – malice toward him").

Plaintiff apparently agrees that DFS has a qualified privilege, arguing that the Complaint alleges facts that show that "DFS knowingly, or at a very minimum, recklessly disregarded the falsity of its 'charged off' report when it made, and refused to correct, the report." (P's Mem. 9-10.)  Plaintiff is correct.  Plaintiff has plausibly alleged that on May 31 and June 1, 2011, it communicated with numerous DFS representatives and explained why the charge-off was improper.  (Compl. ¶¶ 77, 79-99.)  Plaintiff further alleges that a DFS manager agreed the charge-off was erroneous.  (*Id.* ¶¶ 86, 89.)  Yet DFS refused to do anything to correct its error, and, almost a year later, allegedly reported the erroneous charge-off to Equifax.  (*Id.* ¶¶ 113-14.) These facts render plausible the conclusion that DFS acted knowingly, or at least recklessly, in reporting Plaintiff's account as delinquent when it knew, or should have known, that it was not. Defendants argue that Plaintiff has not alleged facts plausibly suggesting why Defendants would have borne ill will towards it, but such allegations are not required; either actual spite or ill will, *or* knowing or reckless disregard of the falsity of the statement, will suffice.  *See Rosenberg*, 8 N.Y.3d at 365; *Liberman v. Gelstein*, 80 N.Y.2d 429, 438 (1992).  Plaintiff has thus plausibly alleged facts that could overcome the qualified privilege.  The Motion to Dismiss the defamation of credit claim is therefore denied.

### F.   Negligence and Gross Negligence Claims

Plaintiff's negligence and gross negligence claims are both premised on DFS's reporting to Equifax of its "charging off" of Plaintiff's debt.  (Compl. ¶¶ 156-57, 160.)  To prevent "contract law from drowning in a sea of tort[,] . . . . New York courts restrict [breach of contract] plaintiffs who have suffered economic loss, but not personal or property injury, to an action for

the benefits of their bargains." *Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*, 244 F.R.D. 204, 220 (S.D.N.Y. 2007) (alterations, footnote, and internal quotation marks omitted).  Thus, where "the damages suffered are of the type remediable in contract, [generally] a plaintiff may not recover in tort." *Id.* (internal quotation marks omitted).  The exception is where "a legal duty independent of the contract itself has been violated." *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 389 (1987); *accord Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 58 (2d Cir. 2012).  "This legal duty must spring from circumstances extraneous to, and not constituting elements of, the contract, although it may be connected with and dependent upon the contract." *Clark-Fitzpatrick, Inc.*, 70 N.Y.2d at 389; *accord Bayerische Landesbank*, 692 F.3d at 58.

Plaintiff alleges in its Complaint that "DFS had a duty to report accurate credit information concerning [Plaintiff] to Equifax *premised upon the common law*," (Compl. ¶ 156 (emphasis added)), but argues in its brief only that "this Court should impose a duty of care upon the [D]efendants to accurately report [Plaintiff's] credit information" based on provisions of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, (P's Mem. 11 & n.14).  Plaintiff acknowledges "the absence of statutory mechanisms to provide for accurate credit reporting in the commercial setting," but requests that the Court impose such a legal duty on DFS based on the policy concerns undergirding the FCRA.  (*Id.* at 11 ("[Plaintiff] perceives no reason why these public policy concerns should not also be applied to business customers.").)

This Court is not going to invent a state-law duty that New York courts have not seen fit to recognize.  And if it were going to do so, it would not premise such a duty on an act of Congress that specifically excludes transactions such as the one at issue here.  *See Cnty. Vanlines, Inc.*, 317 F. Supp. 2d at 394 n.11 (FCRA "is applicable only to consumer credit

reporting, and not to commercial credit reporting"); *Boothe v. TRW Credit Data*, 523 F. Supp.

631, 633 (S.D.N.Y. 1981) ("It is clear from its legislative history that the [FCRA] was intended

to apply only to reports which relate to the consumer's eligibility for personal credit or other

commercial benefits as a consumer, and not to the consumer's business transactions.").

      Accordingly, Plaintiff's negligence and gross negligence claims are dismissed under New

York's economic loss rule because Plaintiff has failed to identify a legal duty independent of the

contract that can support a tort claim.

### G. **"Constructive Trust" Claim**

      Plaintiff has expressly waived its "constructive trust" claim.  (Doc. 13, at 3 ("We agree

with [D]efendants that a constructive trust claim does not lie.").)  Accordingly, Plaintiff's

"constructive trust" claim is dismissed.  Furthermore, as the "constructive trust" claim is the only

claim brought against ARS, the Complaint is dismissed as against ARS.

## III.   DEFENDANTS' MOTION TO STRIKE CLASS ALLEGATIONS

      Defendants move, in the alternative, to strike Plaintiff's class allegations pursuant to Fed.

R. Civ. P. 23(d)(1)(D), on the ground that the class is, as a matter of law, not "precise, objective

and presently ascertainable."  (Ds' Mem. 18 (internal quotation marks omitted).)

### A. **Motion to Strike Class Allegations Standard**

      Motions to strike are generally disfavored.  *Chenensky v. N.Y. Life Ins. Co.*, No. 07-CV-

11504, 2011 WL 1795305, at *1 (S.D.N.Y. Apr. 27, 2011) (collecting cases).  "A motion to

strike class allegations is even more disfavored because it requires a reviewing court to

preemptively terminate the class aspects of [the] litigation, solely on the basis of what is alleged

in the complaint, and before plaintiffs are permitted to complete the discovery to which they

would otherwise be entitled on questions relevant to class certification."  *Id.* (alteration and

internal quotation marks omitted) (collecting cases).  "Accordingly, district courts in this Circuit

have frequently found that a determination whether the Rule 23 requirements are met is more

properly deferred to the class certification stage, when a more complete factual record can aid the

Court in making this determination."  *Mazzola v. Roomster Corp.*, 849 F. Supp. 2d 395, 410

(S.D.N.Y. 2012) (collecting cases).

Defendants argue that identification of members of the putative class – that is, certain

DFS customers whose billing statements were "incorrectly sent to an old and/or improper

mailing address other than the billing address of the customer's existing DFS account," (Compl.

¶¶ 130-31) – is not "administratively feasible" because it would require a highly individualized

inquiry that "would essentially require a mini-hearing on the merits of each case."  (Ds' Mem.

18-19 (internal quotation marks omitted).)  It is true that a class will not be certified if its

members are not ascertainable, but "a class is not rendered unascertainable merely because an

analysis of data is necessary to determine class membership."  *In re Vitamin C Antitrust Litig.*,

279 F.R.D. 90, 116 (E.D.N.Y. 2012); *see Dunnigan v. Metro. Life Ins. Co.*, 214 F.R.D. 125, 136

(S.D.N.Y. 2003) (that manual "examination of the individual files" of putative class members

"may be slow and burdensome" does not mean class is unascertainable).  So long as class

membership is determined by reference to "objective criteria," even if class members cannot be

ascertained prior to certification, the threshold requirement of ascertainability is met.  *See In re

Methyl Tertiary Butyl Ether ("MTBE") Prods. Liability Litig.*, 209 F.R.D. 323, 336-37

(S.D.N.Y. 2002).

Defendants have not demonstrated that, as a matter of law, the putative class is

unascertainable.  I do not pre-judge the issue, because I have so little information, but it does not

appear to me that determining whether a putative class member had a bill sent to an incorrect

address necessarily requires a "mini-hearing on the merits." Rather, it appears to require only an objective comparison between the address the customer provided, and the address to which DFS sent bills. Furthermore, given that class discovery is ongoing, an amended complaint may be in the offing, and a motion for class certification has yet to be made, I am not prepared to take the disfavored action of striking the class allegations. Defendants' Motion to Strike is therefore denied.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is hereby GRANTED IN PART and DENIED IN PART, and Defendants' Motion to Strike Class Allegations is hereby DENIED. The Clerk of Court is directed to terminate the pending Motion, (Doc. 16), terminate A.R.S. National Services, Inc. as a defendant, and terminate Dell, Inc., Dell Marketing, L.P., and Dell Direct Sales, L.P. as defendants without prejudice. *See* Note 2, above. The remaining claims in the case are Plaintiff's breach of contract, breach of implied covenant of good faith and fair dealing, and defamation of credit claims against Dell Financial Services, L.L.C.

The parties are directed to appear before me for a pre-motion conference on October 4, 2013, at 11:45 a.m. to discuss Plaintiff's request to amend.


**SO ORDERED.**


Dated: September 12, 2013
         White Plains, New York


_____
CATHY SEIBEL, U.S.D.J.

22